UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WALTER THOMPSON, a/k/a<br>AL THOMPSON d/b/a<br>CENCAL SALES COMPANY, d/b/a<br>CENCAL AVIATION PRODUCTS,<br><br>    Defendants. | NO. CIV. S 03-1532 FCD GGH<br><br><br><br>MEMORANDUM AND ORDER |

----oo0oo----

This matter is before the court on motion by plaintiff, United State of America ("government") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, to

permanently enjoin defendant Walter Thompson[1] to comply with the applicable federal tax laws, specifically to withhold and pay over federal employment and unemployment taxes, and to file all required federal returns.  The government also moves to dismiss defendant's counterclaim pursuant to 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to dismiss the counterclaims pursuant to Rule 56.  For the reasons set forth below,[2] the government's motions are GRANTED.

## BACKGROUND[3]

Defendant owned Cencal Sales Co. ("Cencal"), a company that manufactured and sold travel bags and accessories for aviators.  (Pl.'s Am. Compl. ¶ 7).  Cencal employed approximately 25 employees.  (Stmt. of Undisp. Facts ¶ 1).  From July 2000 until August 2004, defendant failed to withhold federal employment taxes from his employees' wages, failed to make federal employment tax deposits, failed to file his federal employment

---

[1] Defendant Walter Thompson is proceeding *pro se* in this matter.

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

[3] Defendant has not filed a response to the government's amended complaint and default was entered against him.  (No. Civ. 03-1532, 29, entered Oct. 7, 2003; 44, entered Dec. 12, 2003).  The court therefore must consider the facts alleged in the complaint as true.  See Geddes v. United Financial Group, 559 F.2d 557 (9th Cir. 1977) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")  The government has included facts alleged in the amended complaint as well as facts supported by declaration in its statement of undisputed facts.  Defendant has not responded in any way to the government's motion for summary judgment.  Therefore, the facts as alleged by the government in its statement of undisputed facts are taken as true.

Case 2:03-cv-01532-FCD-GGH   Document 181   Filed 09/28/05   Page 3 of 10

and unemployment tax returns, and failed to file and issue wage and tax statements.[4]  (Id. ¶ 2).  As of September 8, 2005, defendant has caused an estimated $559,441.91 in lost revenue to the United States Treasury.  (Id. ¶ 4).  According to defendant's son Anthony Thompson, Cencal ceased operations in August 2004 and the business property is currently in storage.  (Id. ¶¶ 11-12).

On July 23, 2003, the government filed a motion seeking a preliminary injunction to enjoin defendant from (a) failing to withhold federal taxes from employee wages; (b) failing to file timely federal employment and unemployment tax returns with the IRS; (c) failing to file timely wage and tax statements with the Social Security Administration, and (d) failing to make timely federal employment and unemployment tax deposits and payments to the IRS.  On September 12, 2003, the court scheduled a hearing on the government's motion for a preliminary injunction.  Defendant failed to appear for the hearing, despite efforts by the court to ensure defendant's appearance.[5]  The court subsequently granted the government's motion for preliminary injunction and the clerk entered default against defendant.  (Mem. and Order, filed Sept. 12, 2003; No. Civ. 03-1532, 29, entered Oct. 7, 2003; 44, entered Dec. 12, 2003).  Defendant was also sanctioned under Rule 11 for filing frivolous motions that were completely unresponsive to the

---

[4] During the fourth quarter of 2003, from September 16, 2003 to February 2, 2004, defendant's son Anthony Thompson managed Cencal.  Under his management, Cencal withheld federal employment taxes from its employees' wages, paid that money to the United States, and filed its fourth quarter 2003 returns.  (Id. ¶¶ 2, 9).

[5] The courtroom deputy clerk contacted defendant by telephone on September 11, 2003 to remind him that the hearing was scheduled for the following day.

government's motions and that were entirely without merit.  (Mem. and Order, filed Nov. 18, 2003).

After the court entered a preliminary injunction by default against defendant, he was twice incarcerated for failure to comply with the preliminary injunction.  Defendant's two terms in the Sacramento County Jail had no apparent effect on his willingness to comply with the preliminary injunction, and the court ultimately concluded that further confinement would be punitive.  Defendant was ordered to be released from custody on September 9, 2004.  (Mem. and Order, filed Sept. 9, 2004).

On November 17, 2004, the United States filed a 14-count indictment against defendant, charging him with filing a false claim against the United States, filing a false income tax return, and failing to withhold taxes from the paychecks of Cencal employees.  On January 28, 2005, defendant was convicted on 13 counts.  Defendant is currently serving a 72-month sentence.  (Stmt. of Undisp. Facts ¶ 13).

During the course of the criminal proceedings, defendant filed his first amended counterclaim to the government's civil suit, alleging damages for injuries caused by the government and individual government employees arising out of the enforcement of the internal revenue laws.  Defendant asserts that "all internal revenue laws were repealed in 1939" and that there are "no underlying statutes" for the Internal Revenue Code.  He alleges that "without any law there cannot be any transgression."  (Df.'s Countercl., filed Dec. 30, 2004, at 1).  Therefore, defendant claims that the government's civil prosecution for federal tax

4

law violations and any actions associated therewith have caused him unlawful injuries. (Id.)

The government brought this motion for summary judgement for a permanent injunction requiring defendant to comply with the applicable federal tax laws. The government also seeks to dismiss defendant's counterclaims.

**STANDARD**

**A.  Motion to Dismiss**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

/////
/////

**B.    Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

/////
/////
/////

**ANALYSIS**

**A.   Defendant's Counterclaims**

The government argues that defendant's counterclaims should be dismissed.[6] Defendant filed his first amended counterclaim on December 30, 2004.[7] Counterclaims are to be filed at the time the defendant serves the answer. Fed. R. Civ. P. 13. However, a party may obtain leave of the court to assert a counterclaim when the claim was omitted "through oversight, inadvertence, or excusable neglect, or when justice requires." Id.

Defendant never filed a responsive pleading to the government's complaint and the court entered default against the defendant. Defendant waited over a year from the government's filing of the amended complaint to raise this counterclaim. Defendant did not apply for leave of the court to file this counterclaim. Moreover, justice does not require that the court give defendant leave to assert the first amended counterclaim. Defendant has a history of filing frivolous and dilatory motions in this matter, which has resulted in the court's issuance of Rule 11 sanctions. This counterclaim does not depart from defendant's pattern of improper conduct, as a cursory review of

---

[6] The government first moved to dismiss defendant's counterclaim filed on August 25, 2003. The court ordered this claim stricken from the record on November 18, 2003. Thus, the court need not evaluate the merits of the government's argument as to this counterclaim.

[7] The government contends that defendant failed to effect service, the time for service has expired, and that the court should therefore dismiss the counterclaim in its entirety. However, defendant submitted proof of service to all named individual defendants and the United States Department of Justice dated December 27, 2004. Therefore, this argument is unavailing.

7

the law would reveal that his claim is entirely without merit. Defendant's counterclaims are thus dismissed as untimely.

Furthermore, even if the court were to consider the merits of defendant's counterclaim, he fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Defendant asserts claims against the government and individual government officials for "damages for injuries that bred the result of untold misery, distress, violation of rights, loss of good name, and financial ruin." (Df.'s Countercl., filed Dec. 30, 2004, at 1). All of these alleged injuries arise out of the government's civil action against him for violating federal tax laws. The gravamen of defendant's claim is that there are no valid internal revenue laws because they were repealed in 1939; therefore, the government's actions associated with the enforcement of these laws have violated his rights and caused him injury.

Contrary to defendant's assertions, the Internal Revenue Code is in full force and effect. Therefore, his claims for injuries resulting from the government's enforcement of allegedly invalid internal revenue laws are dismissed. The government's motion is GRANTED.

**B.   Permanent Injunction**

Internal Revenue Code § 7402(a) provides that the district courts "have jurisdiction to make and issue in civil actions writs and orders of injunction . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." Because § 7402(a) grants the court injunctive power, the government need only show that an injunction is appropriate for the enforcement of the internal revenue laws, without reference

8

to the traditional equitable factors. <u>United States v. Stoll</u>, No. Civ. C05-0262, 2005 WL 1763617, *8 (W.D. Wash. June 27, 2005) (citing <u>In re Dow Croning Corp.</u>, 280 F.3d 648, 658 (6th Cir. 2002) (holding, in a bankruptcy case, that where a statute, such as IRC § 7402(a), grants the court injunctive power, the court is not "confined to traditional equity jurisprudence")). Injunctive relief is appropriate if the defendant is reasonably likely to violate the federal tax laws again. <u>See</u> <u>United States v. Harkins</u>, 355 F. Supp. 2d 1175, 1180 (D. Or. 2004) (citing <u>United States v. Kaun</u>, 827 F.2d 1144, 1150 (7th Cir. 1987). "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations." <u>SEC v. Murphy</u>, 626 F.2d 633 (9th Cir. 1980). Courts may consider factors such as:

> (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation, and her degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve her in such transaction; (4) the defendant's recognition of her own culpability; and (5) the sincerity of her assurances against future violations.

<u>Harkins</u>, 355 F. Supp. 2d at 1181 (citing <u>United States v. Raymond</u>, 228 F.3d 804, 813 (7th Cir. 2000).

In this case, the government has presented evidence to demonstrate there is a likelihood of future tax violations by defendant. The government estimates that the United States Treasury has lost an estimated $559,441.91 as a result of defendant's conduct. The government has presented evidence of defendant's past conduct of knowingly and continuously acting in a manner that violates federal tax laws. The government has also

9

presented evidence of defendant's persistent and obstinate refusal to comply with both the federal tax laws and this court's preliminary injunction, despite contempt charges and subsequent incarceration.  Defendant's business property is currently being held in storage while he is incarcerated for federal criminal tax violations.  Defendant has not acknowledged the illegality of his conduct, nor has he denied any of the factual allegations against him.  "Defendant instead has chosen to respond to the lawsuit with several frivolous filings, primarily containing nonsensical challenges to the authority of the courts and the entire federal tax system."  Harkins, 355 F. Supp. 2d at 1181 (holding that a statutory injunction under § 7402(a) was necessary).  Because of defendant's past violations of federal tax laws, his continuous challenges to the authority of the courts and the entire federal tax system, and his ability to reopen his business after his term of incarceration, a statutory injunction under IRC § 7402(a) is necessary for the enforcement of internal revenue laws.[8]

**CONCLUSION**

For the foregoing reasons, the government's motion for entry of default judgment is GRANTED.

IT IS SO ORDERED.

DATED: September 27, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[8] In light of the court's order, the court does not address the alternative basis for injunctive relief advanced by the government.